IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | |
| | § | |
| MARTIN CANTU, | § | |
| | § | |
| Defendant, | § | |
| | § | |
| BANK OF AMERICA, NA, | § | Criminal No. 3:13-CR-347-K-BK (02) |
| FIDELITY MANAGEMENT | § | |
| TRUST CO., TEACHER | § | |
| RETIREMENT SYSTEM OF | § | |
| TEXAS, and WELLS FARGO | § | |
| BANK, NA, | § | |
| | § | |
| Garnishees. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and the order of reference, Doc. 153, this case has been referred to the undersigned United States Magistrate Judge for hearing, if necessary, and findings and a recommended disposition regarding the claims for exemption and requests for hearing filed by Defendant Martin Cantu, Doc. 146; Doc. 147. Defendant Cantu also filed a Supplemental Answer to Writ of Garnishment, Doc. 150, and Response [Reply] to the United States' Response and Objection, Doc. 154. Based on the facts in the record and the applicable law, each of Defendant Martin Cantu's claims for exemption, requests for hearing, and other relief sought from this garnishment proceeding should be **DENIED**.

**BACKGROUND**

On May 26, 2015, a jury found Defendant Martin Cantu (Cantu) guilty of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, securities fraud in violation of 15

U.S.C. §§ 78j(b) and 78ff, and aiding and abetting in violation of 18 U.S.C. § 2 for his role in a complex investment fraud scheme that caused substantial losses to multiple individual investor victims. Doc. 1 (Indictment); Doc. 95 (Jury Verdict); Doc. 101, (Presentence Investigation Report (PSR)). On December 15, 2015, the Court ordered Cantu to immediately pay restitution in the total amount of $423,938.66, at the rate of at least $50 per month. Doc. 128 at 4-6 (Judgment in a Criminal Case).[1]

Pursuant to 18 U.S.C. § 3613(c), upon entry of judgment, a federal tax-type lien arose on all of Cantu's property and rights to property. To enforce its judgment against Cantu, pursuant to 18 U.S.C. § 3613 and the Federal Debt Collection Procedures Act (FDCPA), 28 U.S.C. § 3205, the Government sought, obtained, and served writs of garnishment seeking nonexempt property of Cantu and/or his spouse[2] in the possession, custody, or control of Garnishees Bank of America, NA, Fidelity Management Trust Co. (Fidelity), Teacher Retirement System of Texas (TRS), and Wells Fargo Bank, NA and their successors, affiliates and/or assigns (collectively Garnishees). Doc. 137; Doc. 138; Doc. 139; Doc. 140; Doc. 141; Doc. 142.

Bank of America answered that it does not hold property for either Cantu or his spouse, Susan Cantu. Doc. 144. Fidelity answered that it holds one Roth IRA for Susan Cantu with an approximate balance of $7,965 subject to market fluctuation, and noted that a Roth IRA for

---

[1] To date, Cantu has paid $525, and $58,525 has been paid by his jointly and severally liable co-defendant, Jason Wynn, leaving an outstanding balance of $365,413.66.

[2] According to the PSR, Cantu has been married to Susan Cantu since August 1979, Doc. 101-1 at 13, ¶ 59.

Martin Cantu was closed on July 21, 2015. Doc. 143.[3] TRS answered that it holds a retirement account for Susan Cantu with an approximate value of $14,696.50, as of August 25, 2016 and based on six years of service, which is not payable until Susan Cantu retires or otherwise terminates TRS membership. Doc. 145. Wells Fargo Bank did not file an answer to the writ, but the United States' Response and Objection to the Defendant's Claims for Exemption and Requests for Hearing noted that Wells Fargo Bank notified the Government that it does not hold property for either Cantu or his spouse. Doc. 151.

On or about August 24, 2016, the Government served Cantu and his spouse with the Application for Writs of Garnishment; Clerk's Notice of Exemptions and Hearing and/or Transfer Request Form; Writ of Garnishment for each Garnishee; Answer Forms; and Letters of Instructions to Defendant, Spouse, and each Garnishee. Doc. 149. From early September through mid-October, 2016, only Defendant Cantu has filed a responsive pleading, to-wit: two separate claims for exemption and requests for hearing, Doc. 146; Doc. 147, Supplemental Answer to Writ of Garnishment, Doc. 150, and Response [Reply] to the United States' Response and Objection, Doc. 154, each of which alleges that the property held by Fidelity and TRS is his spouse's separate property as the result of a partition agreement executed on September 1, 2008. Defendant's spouse, Susan Cantu, has not filed any claim, objection, or response regarding any notice or answer filed by the Government, the Garnishees, or the Defendant, and the statutory time period to do so has elapsed.

For the reasons set forth below, Cantu lacks standing to contest the writs and has failed to

---

[3] It appears that Cantu liquidated this asset less than two months after his conviction and approximately five months before his sentencing. There is no evidence in the record to establish how much Cantu withdrew from this account or what happened to those funds. Doc. 143.

demonstrate that the property held by Garnishees Fidelity and TRS is exempt from garnishment as separate property of his spouse.

## LEGAL STANDARDS

Pursuant to 18 U.S.C. § 3613(c), upon entry of judgment a lien arises against all of a criminal defendant's property and rights to property, including his separate property, all of his sole-management community property, all joint-management community property, and his one-half interest in his spouse's sole-management community property earned during their marriage. *United States v. Loftis*, 607 F.3d 173, 176-79 (5th Cir. 2010) (citing *Medaris v. United States*, 884 F.2d 832, 833-34 (5th Cir. 1989)).  The United States Court of Appeals for the Fifth Circuit has repeatedly ruled that the Government is entitled to garnish a debtor's interest in retirement funds, including those accrued as community property by a spouse during marriage.  *See United States v. Phillips*, 303 F.3d 548 (5th Cir. 2002); *United States v. DeCay*, 620 F.3d 534, 539-542 (5th Cir. 2010); *Loftis,* 607 F.3d at 178-179 (affirming FDCPA garnishment of community property earned by spouse during marriage, including state pension and retirement funds); *Medaris*, 884 F.2d at 833-34 (Government can garnish one-half of sole-management community property of non-debtor spouse); *United States v. Elashi*, 789 F.3d 547 (5th Cir. 2015); and *United States v. Stallons*, 565 F. App'x 314, 315-17 (5th Cir. 2014) (government entitled to garnish even non-debtor spouse's community property for criminal debts).

The FDCPA provides that within 20 days of service, debtors or interested parties may request a hearing to determine: (1) the probable validity of any claim for exemption; (2) the compliance with the statutory requirement for the issuance of the writ; or (3) certain issues that

4

pertain to the enforcement of default judgments. 28 U.S.C. § 3202(d). Each claimant asserting an exemption bears the burden of persuasion. 28 U.S.C. § 3014(b).

Pursuant to 28 U.S.C. § 3304, a transfer of property may be void as fraudulent when a transfer is made with intent to hinder, delay, or defraud a creditor after notice of a claim of debt and/or when made without the debtor receiving reasonably equivalent value from the transferee in exchange for the property when the debtor believed or reasonably should have believed that he would incur debts beyond his ability to pay. Subject to the defenses in 28 U.S.C. § 3307, the following remedies are available to the United States regarding fraudulent transfers of property: (1) avoidance of the transfer or obligation to the extent necessary to satisfy the debt; (2) levy against the asset transferred; and/or (3) levy against other assets of the transferee. 28 U.S.C. §§ 3304, 3306, and 3307; *see also Loftis*, 607 F.3d at 176-79 (affirming avoidance of partition agreement as fraudulent and garnishment of non-debtor spouse's property). Under 28 U.S.C. § 3307, an affirmative defense is available to a transferee who took the property in good faith and for a reasonably equivalent value. *See* 28 U.S.C. § 3307(a).

## ANALYSIS

Defendant's claims for exemption and requests for hearing should be denied because: (1) Cantu lacks standing to object for his spouse; and (2) even if Cantu could represent his spouse, he has failed to prove that he conveyed his interest in the property held by each Garnishee to his spouse, and that he received consideration of reasonably equivalent value in exchange for each transfer of property.

**I.     Defendant lacks standing to claim property does not belong to him.**

Cantu claims that the property the Government seeks "is exempt as it is not co-owned by the judgment debtor" pursuant to a partition agreement that has not been produced to support his

5

claims. The Court agrees with the Government that Cantu cannot simultaneously disclaim any interest in the seized property and object to its garnishment. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-63 (1992); *U.S. v. Elliott*, 149 F. App'x 489, 494 (7th Cir. 2005) (by insisting that he has no interest in the money he seeks to protect, the defendant "dooms all his arguments because he cannot litigate the rights of a third party."); and *United States v. Santee Sioux Tribe of Neb., et al.*, 254 F.3d 728, 735 (8th Cir. 2001) (having disavowed ownership, defendant "did not have standing to object to the garnishment of accounts in which it did not have a substantial interest.").

**II.     Defendant fails to show the probable validity of any claim for exemption.**

Even if Cantu could make claims for his spouse, he fails to show the probable validity of any claim for exemption to obtain a hearing under 28 U.S.C. § 3202(d). Debtors and potentially interested parties who receive notice of an FDCPA writ have an opportunity to prove what funds in which accounts belong to whom, but each claimant bears the burden of doing so. *See* 28 U.S.C. § 3014; *United States v. Gaudet*, 187 F. App'x 410 (5th Cir. 2006) (claimant bears burden of persuasion of an exemption); and *Santee Sioux Tribe of Neb.*, 254 F.3d at 732 (28 U.S.C. § 3014(b)(2) provides "[u]nless it is reasonably evident that the exemption applies, the debtor shall bear the burden of persuasion.").

There is no dispute that Cantu has been married to Susan Cantu since 1979. Only Cantu has alleged that 30 years into their marriage, he and his spouse executed a separate property agreement in September 2008. Doc. 146; Doc. 147; Doc. 150; Doc. 154. More than 20 days have elapsed since Garnishees Fidelity and TRS filed their Answers to the Writs, and more than 20 days has elapsed since Susan Cantu received notice of this garnishment proceeding. Doc.

143; Doc. 145; Doc. 149. Susan Cantu has not claimed a specific exemption, requested a hearing, or otherwise appeared in this proceeding.

Federal law determines priority rights and debt collection procedures, and state law determines the extent of a debtor's interest in property to which a lien attaches. *See Loftis*, 607 F.3d at 176-79 (citing *Medaris*, 884 F.2d at 833-34); and *Randall v. H. Nakashima & Co., Ltd.*, 542 F.2d 270, 272 (5th Cir. 1976). The FDCPA provides that "[c]o-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located." 28 U.S.C. § 3205(a).

Under Texas law, property possessed by either spouse during marriage is presumed to be community property, and the degree of proof necessary to establish that property is separate property is clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003. Neither Cantu nor his spouse has made any showing, let alone by clear and convincing evidence, that the property held by each Garnishee is Susan Cantu's separate property.

According to the Answer TRS filed in this case, TRS acknowledges that under the applicable law, Cantu's interest in his spouse's TRS account, while a future interest contingent upon a distributable event, nevertheless qualifies as property or rights to property that may be garnished. Doc. 145. *See* 18 U.S.C. § 3613 and 28 U.S.C. §§ 3002(12) and 3205(a); *DeCay*, 620 F.3d at 539-542; *Loftis*, 607 F.3d at 178-179 (affirming FDCPA garnishment of community property earned by spouse during marriage, including state pension and retirement funds); *Medaris*, 884 F.2d at 833-34 (Government can garnish one-half of sole-management community property of non-debtor spouse). According to TRS, upon the occurrence of a distributable event, it will calculate the amount of Susan Cantu's benefit based on her years of service, and Cantu's

interest based on their marital status, at which time the Government may become entitled to 50% of a lump sum distribution and/or 25% of periodic annuity payments to Susan Cantu, less any tax withholding required by law, as Cantu's substantial nonexempt interest in his spouse's sole-management community property.  Doc. 145.  According to the Answer Fidelity filed in this case, Cantu's spouse has accumulated funds in a Roth IRA.  Doc. 143.

There is no evidence in the record to prove that Cantu conveyed his interest in the property held by each Garnishee to his spouse and received consideration of reasonably equivalent value in exchange for each transfer of property.  While Cantu has alleged that he and his spouse executed a partition agreement on September 1, 2008, neither the alleged agreement, nor its terms, appear to have been disclosed to the United States Probation Office for inclusion/discussion in the PSR, and Cantu has not produced the alleged agreement in support of his claimed exemption.

It appears from the evidence in the record that the alleged partition agreement was executed in 2008, after the Securities and Exchange Commission (SEC) had suspended trading of the stock that was the subject of Cantu's fraudulent investment scheme in 2007, and after Cantu had been deposed by the SEC in 2007, but before the SEC filed a civil lawsuit in 2009 and criminal charges were filed in this case in 2013.  Doc. 101-1 at 7, ¶26 (PSR).  Under similar circumstances, the United States Court of Appeals for the Fifth Circuit has held that the Government is entitled to garnish a debtor's interest in a non-debtor spouse's property acquired during marriage notwithstanding a partition agreement executed during or after the debtor's fraudulent conduct.  *Loftis*, 607 F.3d at 176-79 (citing *United States v. Resnick*, 594 F.3d 562, 567 (7th Cir. 2010) (regardless of the date of a debt, and regardless of actual intent, a transfer is constructively fraudulent when a debtor conveys assets for inadequate consideration, rendering himself insolvent, at time when he has existing or contemplated indebtedness)).

Consequently, as the Government correctly argues, Cantu has not shown the probable validity of his claimed exemption as grounds for a hearing.  *See United States v. Stone*, 430 F. App'x 365, 368 (5th Cir. 2011) (unpublished); *United States v. Goyette*, 446 F. App'x 718, 720-21 (5th Cir. 2011) (unpublished) (affirming district court's discretion and denial of hearing under 28 U.S.C. § 3202(d)).

## CONCLUSION

Since Bank of America and Wells Fargo Bank are not holding any property subject to the writs of garnishment, Defendant's request for hearing as to the writs of garnishment issued to them is moot.  For the reasons outlined *supra*, Defendant's claims regarding the property held by Fidelity and TRS fail on the record and the applicable law.  Accordingly, the claims for exemption and requests for hearing filed by Defendant Martin Cantu, Doc. 146; Doc. 147, should be **DENIED**.

**SO RECOMMENDED**, November 1, 2016.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

9

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE